IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAUL OLDS,<br><br>    Plaintiff,<br><br>  vs.<br><br>3M COMPANY a/k/a MINNESOTA MINING & MANUFACTURING COMPANY, et al.,<br><br>    Defendants. | Case No.  2:12-CV-08539 R (MRWx)<br><br>**FINDINGS OF FACT AND CONCLUSIONS OF LAW SUPPORTING SUMMARY JUDGMENT IN FAVOR OF DEFENDANT PRYSMIAN POWER & CABLE SYSTEMS USA, a/k/a PRYSMIAN CABLES & SYSTEMS USA, LLC**<br><br>*From MSJ Heard:*<br>Date:            January 27, 2014<br>Time:            10:00 am<br>Courtroom: Courtroom 8<br>Judge:          Hon. Manuel L. Real |

    The Motion for Summary Judgment, or Alternatively, Summary Adjudication of Issues (causes of action and punitive damage claim) by defendant Prysmian Power & Cable Systems USA, a.k.a. Prysmian Cables & Systems USA, LLC ("Prysmian") came regularly for hearing on January 27, 2014, in Courtroom 8 of the District Court, the Hon. Manuel L. Real, Judge presiding.

    Plaintiff Paul Olds filed no opposition.  After considering the admissible evidence, arguments and separate statement provided by Prysmian, the Court hereby makes the following findings of fact and conclusions of law supporting the entry of the summary

1
Findings of Facts & Conclusion of Law in Support of MSJ by Deft. Prysmian
*Olds v. 3M Company, et al.*
Case No. 2:12-CV-08539 R

judgment requested:

| Uncontroverted Fact: | Supporting Evidence: |
|---|---|
| 1. Plaintiff claims he developed an asbestos-related disease as a result of exposure to asbestos from defendants' products. As to Prysmian, Plaintiff alleges exposure to asbestos from "Galite asbestos-containing thermocouple wire" while serving as an aircraft mechanic in the United States Air Force from 1948 to 1968. | Plaintiffs' Complaint, ¶¶43 and 52(y), at **Exhibit C** to Declaration of Stephen Ezzell ("Ezzell Dec."). |
| 2. Plaintiff claims exposure to "Pirelli asbestos cable and wire" while in the U.S. Air Force at some time from 1948 to 1968. | Plaintiff's responses to General Order Standard Interrogatory 26(a), at **Exhibit D**, p. 12, to Ezzell Dec. |
| 3. Plaintiff was deposed in January 2013 regarding his work around aircraft in the U.S. Air Force, all of which involved military aircraft only. | Transcript of the Deposition of Paul Olds ("Olds Depo."), Vol. II, p. 376:16-20, **Exhibit F** to Ezzell Dec. |
| 4. Immediately after basic training in the Air Force, in late 1948 Plaintiff was assigned to Williams Field, in Arizona. | Olds Depo., Vol. I, pp. 26:23 – 27:10, **Exhibit E** to Ezzell Dec. |
| 5. At Williams Field, Plaintiff worked as a mechanic on F-80 jet aircraft. | Olds Depo., Vol. I, pp. , 27:25 – 28:22, **Exhibit E** to Ezzell Dec. |
| 6. From 1953 to 1956, plaintiff worked in the supply department and maintained the tool crib at Orlando Air Force Base. | Olds Depo., Vol. II, pp 327:23-328:15, **Exhibit F** to Ezzell Dec. |
| 7. The only aircraft at that location were the C-47 and C-45. | Olds Depo., Vol. I, p. 86:13-16, **Exhibit E** to Ezzell Dec. |
| 8. He did not perform any work on aircraft at this location. | Olds Depo., Vol. II**,** p. 328:21-329:2; 322:12-324:12, **Exhibit F** to Ezzell Dec. |
| 9. He did not know the brand name, manufacturer, or supplier of any of the parts he handled. | Olds Depo., Vol. II**,** p. 324:18-25, **Exhibit F** to Ezzell Dec. |
| 10. He could not recall any work that the others may have performed in his presence, and he does not know the material composition of | Olds Depo., Vol. II**,** p. 329:4-330:4, **Exhibit F** to Ezzell Dec. |

2
Findings of Facts & Conclusion of Law in Support of MSJ by Deft. Prysmian
*Olds v. 3M Company, et al.*
Case No. 2:12-CV-08539 R

| Uncontroverted Fact: | Supporting Evidence: |
|---|---|
| any of the components they worked with other than metal. | |
| 11. Plaintiff worked at Sidi Slimane in Morocco in the supply department from 1956 to 1957. | Olds Depo., Vol. II, p. 331:9-333:4, **Exhibit F** to Ezzell Dec. |
| 12. The only aircraft he ordered supplies for was the F-100. | Olds Depo., Vol. I, p. 87:16-88:8., **Exhibit E** to Ezzell Dec. |
| 13. Plaintiff did not perform work on aircraft or aircraft components at Sidi Slimane, nor did he see others perform work on aircraft at this location. | Olds Depo., Vol. II, p. 333:1-21, **Exhibit F** to Ezzell Dec. |
| 14. Plaintiff was stationed at Eglin Air Force Base from 1959 to 1963. | Olds Depo., Vol. II, p. 336:20-337:10, **Exhibit F** to Ezzell Dec. |
| 15. The only aircraft at that location was the B-52. | Olds Depo., Vol. II, p. 337:18-24, **Exhibit F** to Ezzell Dec. |
| 16. Ninety percent of plaintiff's time was spent on the flight line in the cockpit of the aircraft. | Olds Depo., Vol. II, p. 340:3-19, **Exhibit F** to Ezzell Dec. |
| 17. He did not work on aircraft engines, but he occasionally saw others from a distance remove and replace engines from the aircraft as whole and complete units. | Olds Depo., Vol. II, p. 340:21-341:22, **Exhibit F** to Ezzell Dec. |
| 18. Plaintiff was stationed at Bergstrom Air Force base from 1963 to approximately 1965 | Olds Depo., Vol. II, p. 343:19-346:25, **Exhibit F** to Ezzell Dec. |
| 19. The only aircraft at that location were the B-52 and KC-135 aircraft. | Olds Depo., Vol. II, p. 344:18-20, **Exhibit F** to Ezzell Dec. |
| 20. Plaintiff worked on the quality control and trim teams, which mostly entailed visual inspections of aircraft and paperwork. | Olds Depo., Vol. II, p. 344:14-25, **Exhibit F** to Ezzell Dec. |
| 21. He did not perform hands-on work to aircraft or aircraft components at Bergstrom AFB, and he did not observe anyone else perform work on aircraft or aircraft components in his | Olds Depo., Vol. II, p. 344:14-345:22; Vol I, 101:17-24. **Exhibit F** to Ezzell Dec. |

3
Findings of Facts & Conclusion of Law in Support of MSJ by Deft. Prysmian
*Olds v. 3M Company, et al.*
Case No. 2:12-CV-08539 R

| Uncontroverted Fact: | Supporting Evidence: |
|---|---|
| presence. | |
| 22. Plaintiff was stationed at March Air Force Base from 1965 - 1967. | Olds Depo., Vol. II, p. 346:17-347:2, **Exhibit F** to Ezzell Dec. |
| 23. The only aircraft at that location was the B-52. | Olds Depo., Vol. II, p. 347:810, **Exhibit F** to Ezzell Dec. |
| 24. Plaintiff worked on the quality control team at March AFB, but he performed no hands-on work to aircraft or aircraft components, and he did not observe anyone else perform work on aircraft or aircraft components in his presence. | Olds Depo., Vol. II, p. 347:11-20, **Exhibit F** to Ezzell Dec. |
| 25. Plaintiff was stationed in Guam for six months. | Olds Depo., Vol. II, p. 348:17-25, **Exhibit F** to Ezzell Dec. |
| 26. The only aircraft at that location was the B-52. | Olds Depo., Vol. II, p. 349:7-12, **Exhibit F** to Ezzell Dec. |
| 27. Plaintiff supervised other mechanics but he could not recall any specific tasks or duties that they performed in his presence. | Olds Depo., Vol. II, p. 349:13-351:1, **Exhibit F** to Ezzell Dec. |
| 28. Plaintiff was stationed in Thailand from 1967 to 1968. | Olds Depo., Vol. II, p. 351:3-13, **Exhibit F** to Ezzell Dec. |
| 29. The only aircraft at that location was the Republic F-105. | Olds Depo., Vol. II, p. 351:16-19, **Exhibit F** to Ezzell Dec. |
| 30. Plaintiff did not work on aircraft or aircraft components, and he could not recall any work that others performed in his presence. | Olds Depo., Vol. II, p. 351:20-354:1, **Exhibit F** to Ezzell Dec. |
| 31. Plaintiff confirmed that he did not know the maintenance history of any of aircraft or aircraft components that he ever encountered at any of his jobsites. | Olds Depo., Vol. II, p. 376:21-378:1, **Exhibit F** to Ezzell Dec. |
| 32. Of all the aircraft in all the locations Plaintiff worked while in the Air Force, the only testimony he gave referencing wiring or cables was in the F-80 jet aircraft at Williams Field starting in 1948. | See, Olds Depo., Vol. I, pp. 61:12-15, 70:8-13, **Exhibit E** to Ezzell Dec.; Vol. II, pp. 300:15 – 301:7, **Exhibit F** to Ezzell Dec. |

4
Findings of Facts & Conclusion of Law in Support of MSJ by Deft. Prysmian
*Olds v. 3M Company, et al.*
Case No. 2:12-CV-08539 R

| Uncontroverted Fact: | Supporting Evidence: |
|---|---|
| 33. All of the wires and cables he saw and worked on for the F-80 aircraft at Williams Field, as well as the surrounding tail assemblies, were made "entirely from metal." | Olds Depo., Vol. II, pp. 294:6-20, 299:9-14, 301:22 – 302:19, 303:9-14, 305:5 – 306:8, 307:4-13, 359-14 – 362:25, **Exhibit F** to Ezzell Dec.) |
| 34. "Pirelli Cable Corp." was the name under which Prysmian was originally formed in 1978. | Schmitt Dec. ¶¶2-3. |
| 35. As part of its formation in 1978, Pirelli Cable Corp. obtained specified assets from General Cable Corp. via the "Agreement Dated February 24, 1978." | Schmitt Dec. ¶¶3-4; **Exhibit A** to the Ezzell Dec. |
| 36. The "Agreement Dated February 24, 1978" effectuates a the purchase only of specific assets from General Cable Corp. | Schmitt Dec. ¶¶3-4; see, asset specification at **Exhibit A** to the Ezzell Dec., pp. PPC 121-123, §1. |
| 37. After the sale of assets specified in the "Agreement Dated February 24, 1978," General Cable Corp. remained in business (and is believed to remain in business today). | Schmitt Dec. ¶¶3-5; see **Exhibit A** to the Ezzell Dec., ¶12 ("Non-Competition" clause), at p. PPC 136; ¶24 ("Notices" to be given to Buyer and Seller as part of the ongoing business of each), at p. PPC 144. |
| 38. As part of the asset purchase from General Cable Corp., Pirelli Cable Corp. hired some of the employees of General Cable, but not its executives or board of directors. | Schmitt Dec. ¶5. |
| 39. General Cable Corp. is not known to have produced wires or cables for aviation application before the "Agreement Dated February 24, 1978." | Schmitt Dec. ¶3. |
| 40. In the "Agreement Dated February 24, 1978," Pirelli Cable Corp. accepted liability or legal responsibility only for claims known and "outstanding as at the Closing Date and relating to the conduct of the business of the Operation: …." | Schmitt Dec. ¶4; see **Exhibit A** to the Ezzell Dec., , p. 5, §4(a). |
| 41. In September 1981, Pirelli Cable Corp. entered into an asset | Schmitt Dec. ¶6; see, "Asset Purchase Agreement" at **Exhibit B** to the Ezzell Dec., |

5
Findings of Facts & Conclusion of Law in Support of MSJ by Deft. Prysmian
*Olds v. 3M Company, et al.*
Case No. 2:12-CV-08539 R

| Uncontroverted Fact: | Supporting Evidence: |
|---|---|
| purchase agreement with Galileo Electro-Optics Corp. and Galite, Inc. | pp.15-17 (assets to be purchased). |
| 42. The "Asset Purchase Agreement dated as of September 15, 1981," effectuated the purchase of specified assets by Pirelli Cable Corp. from Galileo Electro Optics Corp. and its wholly owned subsidiary, Galite, Inc. | Schmitt Dec. ¶¶6-7;  see, **Exhibit B** to the Ezzell Dec., "Asset Purchase Agreement" at pp. 1-6, §1.0. |
| 43. After the sale of assets specified in the "Asset Purchase Agreement dates as of September 15, 1981," Galileo Electro Optics Corp. and its wholly owned subsidiary, Galite, Inc., continued in business at least through the mid-1990s. | Schmitt Dec. ¶¶6-7; see, **Exhibit B** to the Ezzell Dec.,pp. 2-6, §8 ("Change of Name; Non-Competition"), pp. 27-28, §8.4 ("Sales Between Galileo and Buyer"); pp. 25-26, §8.3 (Non-Competition clause). |
| 44. As part of the asset purchase from Galileo/Galite, Pirelli Cable Corp. hired some of the employees of Galite but not its executives or board of directors. | Schmitt Dec. ¶7. |
| 45. As part of the "Asset Purchase Agreement dates as of September 15, 1981," Galileo/Galite  Except as set forth in this Agreement, Buyer will assume no liabilities of either of the Selling Companies, and each of the Selling Companies, jointly and severally, hereby represents, warrants and agrees that Buyer shall not be or become liable for any losses, claims, demands, damages, costs, expenses, liabilities or obligations not expressly assumed in this Agreement of any kind whatsoever, whether fixed or contingent, matured or unmatured, known or unknown, arising out of or relating to the conduct of the business of Galite or Galileo ...." | Schmitt Dec. ¶¶6-7;  **Exhibit B** to the Ezzell Dec., pp. 15-16, §4.2. |
| 46. In the "Asset Purchase Agreement dated as of September 15, 1981," Galileo/Galite agreed to retain liability and legal responsibility | Schmitt Dec. ¶6;  **Exhibit B** to the Ezzell Dec., pp. 20-21. |

6
Findings of Facts & Conclusion of Law in Support of MSJ by Deft. Prysmian
*Olds v. 3M Company, et al.*
Case No. 2:12-CV-08539 R

| Uncontroverted Fact: | Supporting Evidence: |
|---|---|
| for all product warranty claims made on products sold or manufactured prior to the closing date of that agreement:<br><br>"As used herein, "product warranty obligations" shall mean all obligations of the manufacturer, whether arising under any contract, statute, law, sales policy or otherwise, for breach of any implied or express warranty, negligence in the manufacture, handling or distribution of any products, misrepresentations as to any product, or failure to provide conforming goods, or any similar matter, on the basis of which the purchaser of such product is entitled to return such product or to have such product repaired or replaced at the manufacturer's expense." | |
| 47. In the "Asset Purchase Agreement dated as of September 15, 1981," Pirelli Cable Corp. accepted the liabilities or legal responsibilities of Galileo/Galite "to the extent, and only to the extent, such liabilities are reflected on the face of the Closing Balance Sheet" prepared at the Closing Date of the Agreement (September 15, 1981). | **Exhibit B** to the Ezzell Dec., p. 14, §§4.1 and 4.1(a). |
| 48. Plaintiff's Complaint was filed in October 2012 (and thus was not a "liability" accepted by Pirelli Cable Corp. in the the "Asset Purchase Agreement dated as of September 15, 1981"). | **Exhibit C** to the Ezzell Dec., p. 1. |

7
Findings of Facts & Conclusion of Law in Support of MSJ by Deft. Prysmian
*Olds v. 3M Company, et al.*
Case No. 2:12-CV-08539 R

**CONCLUSIONS OF LAW**

1. Plaintiff Paul Olds filed no opposition and no objections to any of the evidence supplied by Prysmian Power & Cable Systems USA, aka Prysmian Power & Cable Systems USA, LLC ("Prysmian"). Consequently, the facts supplied by Prysmian in support of its motion are uncontroverted.

2, Summary judgment is appropriate because the pleadings, discovery, declarations, and other evidence on file show that there is no genuine issue of material fact and that Prysmian is entitled to judgment as a matter of law.

3. Plaintiff's claims against Prysmian arising out of his first-hand exposure to asbestos fail for lack of causation because there is no evidence of exposure to asbestos-containing components for which Prysmian might be liable. Prysmian did not come into existence until approximately 10 years after Plaintiff's last claimed exposure to an allegedly asbestos-containing product.

4. Prysmian can bear no liability for any allegedly defective product manufactured, sold or distributed by any of its claimed predecessor companies, including but not limited to General Cable Corp. or Galite, Inc., a wholly owned subsidiary of Galileo Electro-Optics, Inc. There is no triable issue of material fact to establish that Prysmian and either of those entities (1) had an express or implied agreement that Prysmian would assume or accept liability for the predecessor's products, (2) that the asset purchases by Prysmian from those entities amounts to a consolidation or merger of the two corporations, (3) that Prysmian is a mere continuation of the seller entities, or (4) the transfer of assets to Prysmian was for the fraudulent purpose of escaping liability for the predecessor entities' debts. (See, *Monarch Bay II v. Professional Service Industries, Inc.* (1999) 75 Cal.App.4th 1213, 1216.)

5. For the foregoing reasons, and pursuant to *F.R.Civ.P.* 56, Plaintiff's causes of action set forth in his Complaint should be, and hereby are, dismissed and defendant Prysmian

/ / /

8
Findings of Facts & Conclusion of Law in Support of MSJ by Deft. Prysmian
*Olds v. 3M Company, et al.*
Case No. 2:12-CV-08539 R

Power & Cable Systems USA, aka Prysmian Cables & Systems USA, LLC shall have judgment in its favor.

DATED:  _February 5, 2014___    _____
                                Honorable Manuel L. Real
                                United States District Court Judge

9
Findings of Facts & Conclusion of Law in Support of MSJ by Deft. Prysmian
*Olds v. 3M Company, et al.*
Case No. 2:12-CV-08539 R

**CERTIFICATE OF SERVICE**

The undersigned, counsel for defendant Prysmian Power & Cable Systems USA, a.k.a. Prysmian Cables & Systems USA, LLC, hereby certifies that a true and correct copy of the foregoing *Proposed* **FINDINGS OF FACT AND CONCLUSIONS OF LAW SUPPORTING SUMMARY JUDGMENT IN FAVOR OF DEFENDANT PRYSMIAN POWER & CABLE SYSTEMS USA, a/k/a PRYSMIAN CABLES & SYSTEMS USA, LLC** was filed with the Court and served electronically through the CM-ECF (Electronic Case Filing) system to all counsel of record and to those registered to receive a Notice of Electronic Filing for this case on January 27, 2014.

LAW OFFICES OF PETER Q. EZZELL
/ *s* / Peter Q. Ezzell

Peter Q. Ezzell
Stephen M. Caine
Attorneys for Defendant Prysmian Power & Cable Systems USA aka Prysmian Cables & Systems USA, LLC

Findings of Facts & Conclusion of Law in Support of MSJ by Deft. Prysmian
*Olds v. 3M Company, et al.*
Case No. 2:12-CV-08539 R